Russell v. Superior Court Mr. Jimenez, may I proceed? Good morning. My name is Paul Jimenez. I'm here for the felons of the Superior Court and Deputy Intervist, which is in this case. Initially I'd like to reserve three minutes of time. Granted. May it please the Court. You've asked a question concerning jurisdiction under either the 11th Amendment or the Revised Organic Act. I don't think there's any question that the jurisdiction here falls under the Revised Organic Act, Section 2B. Although my co-counsel mentioned the 11th Amendment frequently as brief, I think the Revised Organic Act, Section 2B, the 11th Amendment-type jurisdiction, and that the collateral order doctrine and jurisdiction on 1291 covers the court's ability to hear this case. Have we addressed that previously? I don't think there's been a direct determination as to the 11th Amendment, but as we all know, the Revised Organic Act specifically provides for certain amendments to be applicable to the approach announced in the 11th Amendment. It's not in the 11th Amendment. Although there have been prior cases, I believe, where Section 2B jurisdiction has been asserted. But your argument, in essence, is the same principles that animate the collateral order doctrine as apply to the interlocutory appeal of the denial of the 11th Amendment immunity as well as the statutory immunity? Correct. The Cohen cases, the mentioned elements that we've shown, none of them have distinguished between the source of the collateral order, the source of the immunity. They've all basically said because there is immunity, and immunity is an important question, it's subject to an interlocutory appeal. Can we turn then to the question of the absolute immunity and quasi-judicial immunity? Specifically, are you arguing that any public official acting pursuant to a court directive is immune from suit, or only if that action is a ministerial action? Well, I think I'm arguing both. In this particular case, there's been a number of cases in the Third Circuit that have addressed the issue. In particular, Waits v. McGowan has said that the performance of a ministerial duty pursuant to a statute or performance of a ministerial duty pursuant to the order of a court are both subject to absolute immunity. It's also been found that the exercise of discretionary judgment or performance of a function otherwise closely aligned to the judicial process are also entitled to quasi-judicial immunity. But if that were the case, then every time federal agents were executing a search warrant or an arrest warrant, they would be covered by absolute immunity. That would be a sea change in our approach to constitutional violations alleged as to the execution of the searches or arrests. And certainly I have seen a number of cases involving the use of what is claimed to be excessive force in the performance of a search warrant. Yes, John. In this particular case, we have kind of a new circumstance, though. Although there are a couple of cases in this jurisdiction, Muhammad v. U.S. Marshals Service and Banks, which found that U.S. Marshals acting pursuant to a court order were entitled to quasi-judicial immunity, we have a circumstance here where we have territorial marshals who are not employees of the executive branch, but employees of the judicial branch and who, although they have broad law enforcement authority, under their statutory mandates are more or less attached intricately to the functions of the court. They are required by law to execute the orders of the court. They are required by law to execute on the wits of the court and to call the orders of any judge, especially judges that they are particularly assigned to. The other circuits that have addressed this issue haven't distinguished on the basis of who is issuing the pay check, whether it's the judicial branch or executive branch, but rather the specific act that's covered by the order versus the manner of pursuing that. And why shouldn't we focus on that distinction here, where even if the act of bringing someone in isn't self-covered, if it's conducted in a manner that involves excessive force, that that is back in the realm of traditional qualified immunity, not absolute immunity. I think the other circuits and this circuit, when they discuss quasi-judicial immunity, have focused on the function of the individual. And many of the cases involve parties who are actually employees of the court or who have been assigned by the court to perform certain functions that are part and parcel of the judicial process. The fact that the order that's being executed may not have been done so perfectly, I don't think should take this out of the realm of quasi-judicial immunity. In particular, when you look at the Valdez case, which is in our brief and the cases that it collects, it talks about sheriffs and various other law enforcement officers executing orders who may or may not have exercised discretion to do things that were not provided for in the order, but still being subject to the quasi-judicial immunity effect. But Valdez itself was on to say an official performing ministerial action for less than due care may be liable for damages, and the Tenth Circuit in Martin just a few years later was very clear that the immunity granted in Valdez protects a defendant from liability for the actual arrest and does not empower them to execute the arrest with excessive force. But I don't think that that's actually the functions as has been envisioned by the Supreme Court. I think if you start looking at the result of what happens when you follow the court order, that you convert the test from one quasi-judicial immunity to one of liability, because one officer that performs the, that executes the order perfectly gets the immunity, but the other one that maybe doesn't meet to a resistance or has a defendant or a subject that causes them to use force against them doesn't get the same immunity because of the circumstances created by the individual against whom the order is being executed. But if we're going to look at circumstances, that's exactly where qualified immunity comes into play. And we're not talking here about something less than perfect. When a teenager is rendered quadriplegic, that is far less than perfect. That is simply unacceptable as a consequence of being called by a mother to bring a child into court. With qualified immunity, if there is an issue of fact as to what actually happened, as to whether it was reasonable, qualified immunity does not apply. It has to go to the fact finder. And isn't the situation similar here, that it may, a finder of fact may indeed determine that what was done was reasonable in view of the suspect barging through the door and trying to run away. But as a matter of law, you can't say that what the plaintiff contends happened and what the defendant contends happened. The plaintiff says this is unreasonable. The defendant says it is reasonable. There is an issue of fact. And for that reason, qualified immunity cannot be granted at this stage. I think I've got two separate questions. I'm not talking about qualified immunity here. Well, I mean, that's another issue. But it's analogous, an analogous situation to qualified immunity if there is an issue of a juridical fact. With respect to the... To the way that the order to arrest was carried out. That it was unreasonable. I think with the qualified immunity part of this argument, Your Honor, if it got that far... Well, I'm not talking about qualified immunity.  But if there is an issue of material fact, you cannot say that quasi-judicial immunity should apply here because there are issues of fact that have to be determined by the finder of fact. I don't think that that's the way the functional approach is intended to work, however. The courts have said that it's a very rare circumstance where there is a factual issue that will stop a legal determination as to whether the function involved in the case is quasi-judicial immunity. But where do you draw the line? I think Judge, both of my colleagues sort of tried to get to that in a different way. Where do you draw the line here? I mean, this is an order for a... This is an order here from the court to go out and bring Mr. Thompson before the court. And, you know, how is that different? Where do you draw the line between that and an arrest warrant? Which is issued by the court, but it's issued because a probable cause was shown in an application. I think you take all the factors as a whole. Considering that there was a court order, that these are employees of the court, that they're internally involved in operations of the court, and that they are obligated by law, as in Muhammad versus U.S. Marshals Service, to follow the order of the court. And you decide where quasi-judicial immunity applies. And you take heed of the admonishment of the Supreme Court that says, sometimes bad things happen, and that's the price that we pay. We have to accept that in order to make sure that the functions of the judicial system continue to be performed unhampered. But the order of the court was to bring Mr. Thompson back to court. The order of the court here was not a situation where, as we had in Morales, where the court itself ordered the excessive force be used. So we're not even in the realm of that, the manner in which it was being conducted, being something directed by the court. The arguments you're making seem to go to whether the officer's conduct was justified, and whether there was the violation of a clearly established right. These arguments as to whether it was reasonable or not, or justified or not, with material facts that need to be resolved, seem squarely in the realm of qualified immunity, and what qualified immunity is designed to address. Why don't we look at this as a qualified immunity instead of absolute immunity, as the appropriate doctrine? Very quickly with respect to the qualified immunity part of it, I don't think even in that particular case the court performed a correct analysis to determine whether there had been a violation of a constitutional right and a violation of a clearly established right at the time of this particular incident. And they failed to provide the justification for your decision that's been required by Puentes and other decisions of this court that required that the district court do an analysis on the record in that particular case before he gets to the facts of the circumstances. But how do we know that at this stage in the proceedings? This was done at the motion to dismiss stage. Your requests for immunity were denied at the motion for dismiss stage. All we have in front of the district court is your complaint. Right, and the complaint is the starting point for doing that analysis. There was no analysis of the complaint on the Higwell, Twombly, Thomas, or Children's Foundation first, which says first look at the complaint, see what it says on its face. The only thing the court says that we can point to in the complaint is that the complaint doesn't have enough in it for us to determine whether it's qualified immunity. Well, that usually means that they have a stated claim and it should be dismissed. What about amendment? Pardon? What have we determined on qualified immunity that we should send this back to the district court to permit an amendment to the complaint? I think the determination as to whether at this point, as a matter of law, the complaint states a claim for a violation of the Fourth Amendment is well within the realm of this court to make the decision. With respect, going back to the qualified judicial immunity question, if I can remember it. The question, the complaint alleges various constitutional violations. You may have defenses to that complaint, but you haven't had a chance to assert them yet. I know that you'd like to be able to make the argument that the marshals, when they went out, were advised that he was armed and dangerous. But yet, that's not in the complaint. It's not in the four corners of the complaint. The court can't look at that. Right. Those questions, whatever the label is that you put on it, whether you call it quasi-judicial immunity or whether you call it qualified immunity. Well, because I think the variance of constitutional violation are very general. And the purpose of the court's rules in Pickwell, Conley, Thomas, and Sherman first is intended for the court to take a look at that complaint and determine whether it is a plausible cause of action there. And yet, the court didn't do that. And I think partly because there is none on the face of the complaint. On the face of the complaint, the plaintiffs admit that the marshals were acting as a result of an order of the court. What they call Paine's case was actually not Paine's case. But the portion where they say that they were there to bring the court, the juvenile before the court, on the court's order is accurate. And that part of it falls within the quasi-judicial immunity realm. The rest of it, where they allege these general constitutional violations, would fall in the qualified immunity realm. But because they're general and because there's not any analysis of what facts were done to support it, it's now a question of law as to whether the complaint on its face takes out a plausible claim. How do you get past the fact that they allege that the marshals shot Thompson? He was sitting at home, they allege he was sitting at home, wasn't harming anybody, and the marshals shot Thompson. I've narrowed it down to a few points here. But it seems to me that once they allege that they shot him, under these circumstances, you've asserted a constitutional violation. You've asserted a very general one. And it's not clearly a constitutional violation because the subject of a warrant or a suspect. There's nothing in that warrant that says go out and get Thompson if you have to shoot him or him in. Of course not. And there's nothing in the police manual that says when someone's fleeing from you in a vehicle that you have to shoot them. But the courts have found over and over again that under some circumstances it's reasonable to discharge a firearm. Isn't that the crux of the matter? Under some circumstances, the use of legal force is reasonable and is justified. Where we don't know what the circumstances were at the motion to dismiss stage, we're looking at what was alleged. The district court here did not deny qualified immunity per se. The district court said we're going to move forward with limited discovery, focused on the issue of qualified immunity, so that this can be revisited as to summary judgment focused on the qualified immunity issue. District courts do that all the time, and it doesn't mean that qualified immunity is off the table. It means that what is alleged on the face of the complaint, even if fairly there, still has sufficient allegations set forth in that complaint to state a claim. Why isn't that this case? Why don't we have that here? The district court saying, let's have some discovery focused on qualified immunity, and then we'll decide qualified immunity. What is the right approach? Well, I think ten depositions later and thousands of dollars spent on disruption of the entire marshal division, I said Florida speaks to why Thomas said that before you go to even limited discovery, you take other steps to determine whether there has been a violation of a clearly established law. The face of the complaint doesn't establish that. If the court needed more information to make the determination as a matter of law, whether a constitutional violation had been alleged, then they should have asked for a more definite statement, or they should have asked the plaintiffs to respond substantively to the motion to dismiss with the precedence that they're relying on to show that there was a violation of a clearly established law at the time of this incident. You initially made the request for a more definite statement, and then you withdrew the request. I withdrew the request because the court was not responding in the timely fashion that we had discovery deadlines looming. After my statement had been denied, I was caught between a rock and a hard place. It was either proceed with disappeal, which I felt strongly about, or allow the case of anguish indefinitely. I'm fortunate to rule on my motion. Thank you, counsel. Thank you. Mr. Rhea? Thank you. May it please the court, good morning. As you are well aware, my client is a teenager sitting at home in his underwear, unarmed. There was apparently two court orders that were issued earlier for him to be picked up, and brought before a judge so the judge could remind him to follow what his mother told him to do. He suddenly, as the marshals come into his house, while they're sitting there, he tries to escape, and all of this is alleged to the point that as he pushes past the marshals, one of them shoots him. He's now caught for pleasing, and will be for the rest of his life. The government raises various immunities, and I won't speak about each one of them, basically saying that the case should stop here because the marshals were carrying out a function as a public officer pursuant to a court directive. Again, the directive was to bring him to a court, not to shooting. Of course, he was sent to Puerto Rico for emergency care rather than brought before a court. My position, Your Honors, is that Judge Thompson ruled correctly. First, the quasi-judicial immunity issue. There is an immunity for public officials who act pursuant to court directives. But the directive was not to shoot him. The directive was to bring him into court. Exactly, Your Honor, and they didn't do that. That immunity does not blanket permission to do whatever you want to do while you're carrying out an order. The marshals couldn't have said, hmm, let's burn the house down and see if we can drive him out. That would have been a real problem. And they also can't say, hope you drive whenever there's a shooting. I agree completely with the line of questioning that you raised earlier, and that is the kinds of issues that should be looked at or whether or not they were successfully enforced. That would cover whether the qualified judicial, the qualified immunity should apply or the quasi-judicial immunity should apply. Looking at the Supreme Court's decision in Morales has taken the position that absolute judicial immunity does extend to officers who are executing court orders. And based on that same rationale, that is, their ability to conduct their jobs without fear of suits and disruption that ensues, why shouldn't we adopt the same position that they do? I guess the question becomes, at what point are they no longer carrying out that function? Most of the cases, and many were cited in the briefs, that deal with the issue of what does that immunity extend to are set there to protect officers carrying out a court order from having been sued for doing that. Basically, the claims being raised are that a court order was an improper one, and therefore, since they're carrying out an improper court order, they too should be subject to a suit. I agree they shouldn't be subject to suit for directly carrying out the order. The question here is whether or not if they do it in a reasonable manner, particularly if it's a constitutionally vital manner, such as successfully enforced, and whether or not they – I mean, they can't be getting a blanket and do whatever they want to do and say, no, because I think that man was carrying out the order, you can't question me about it. I'm totally free of any type of responsibility. I can burn the house down. I can shoot people. I can do whatever I want, and you can't question me about it. That doesn't make any sense, and I think the reason – legally, it doesn't make any sense, is that that's acting sort of outside the scope of reasonably carrying out a court order. Does it really matter what we call it? I don't think so, Your Honor. It seems to me that it's result-oriented. It's either – you can call it quasi, you can call it qualified immunity. I think it all boils down to the same issue of ethics. How do they act in a reasonable manner in carrying out that order, particularly if they're being disciplined in a constitutional order? Did you meet the Twombly equal standards in your complaint? I think so, Your Honor, and again, I just draw your attention to items, paragraphs 15 and 16 in the complaint, which I think pretty well spell out with some facts particularly what happened. Briefly, they say, at the time that Marshal Richardson and other marshals arrived at the plaintiff's home and attempted to take him into custody, he was relaxing in his underwear and unarmed. Marshal Richardson shot him under circumstances that were unjustified and an excessive use of force. Since, the plaintiff, Thompson, was unarmed and did not threaten bodily harm to the marshals or their parties as he was attempting to run past the marshals. Why aren't those just conclusory allegations? If we need specific facts that are alleged that would provide enough to understand whether there's been a violation of constitutional rights and what the contours of a qualified immunity defense would look like, how does this provide factual allegations as opposed to legal conclusions? Well, the factual allegation is that you have him at home unarmed, not threatening bodily harm, and attempting to run past the marshals, and we know that as a result of that they shot him. Those are facts. Even whether he threatened bodily harm reads as a conclusory assertion. And while it's not on the record, because we're looking at a motion to dismiss the case, but it appears from other things that have been put before us that the marshals have a different rendition of what happened and whether they were threatened bodily harm. And, Your Honor, I think that Dick, Paul, and Tom Lee and the related cases also deal with that issue and say that if there is not enough fled there factually to meet the standard, that the court should literally grant a motion to remand. So should we remand on the qualified immunity issue, should we remand to the district court and instruct the district court to give you an opportunity to remand? How would you plead it if you had an opportunity to remand? Well, I guess we would just do more words with it and put in more facts. Right now, the way it stands procedurally is that Judge Tomlinson has basically asked us to adopt our position, which we have been doing, to flesh out the facts. And so she's withheld any ruling one way or the other and proposed in her order that this might be perhaps right for some of her judgment once the facts are fleshed out in the deposition. Is discovery of that at this point complete? It's supposed to be finished, I think, in the next two or three days. It's virtually complete, yes. I think we've proposed all the people we indicated to the government. I believe the government has proposed all the people we've indicated we want to get right to the folks of ours. The last of the depositions were completed, I believe, this past Friday. So basically, we have now taken the depositions of all the marshals who were present, of the underwriter, Tomlinson, and those that just completed this past week. And I presume in the next day there's going to be a motion for summary judgment on the qualifiability and other issues which are pending before Judge Thompson. She would have held a ruling asking us to do that, basically to gather the information. Given that that's the state of discovery, if we're not satisfied with the specificity of the factual allegations here, would the appropriate course be to remand with instructions, as we've done in some prior cases, for a more definite statement to be elicited? Or for the court to simply proceed to address qualified immunity given the record that's been developed? Both of those would be agreeable to us, Your Honor, and both of those would make sense. I would suggest that since she's held that ruling in advance, and has said since the due depositions which we have now just completed, that we be permitted to complete the motions process, or she's made the rule, on whether or not these various immunities apply based on the fact that it's been developed. I'm not following. What motions are you referring to that were not before you addressed and are now before us on appeals? In Judge Thompson's order that's before you, she declined to rule on the immunity issues, saying that there wasn't enough before her. She then issued an order to recognize... Disqualified immunity. Disqualified immunity, yes. Right. And with respect to the other immunity, quasi-judicial, she said she wasn't persuaded there was quasi-judicial immunity. I agree with Your Honors, they're very closely related. And we are now, we have finished the depositions that she asked us to take to develop the fact pattern with respect to those issues. And she is now looking to us to file motions, the government, I presume, will file this motion to dismiss, based upon immunities, and lay out in that motion the fact pattern that it has developed. And we'll be responding by saying, well, here's the fact pattern as we see it, and then Judge Thompson will be ruling. So, I think that she's on track to finish in the same place, which is going to be the factual development of exactly what happened, and then it will be on the merits. Not that it makes any difference. I just, when I was looking at your brief, and you're not one to brief. No, I'm not. You met Ross Edwards. Yes. Is that your appellate counsel, or are you the appellate counsel for Ms. Edwards? I was not involved in this case until fairly recently, and then Ms. Edwards asked me if I would be willing to be co-counsel, which I answered yes. So I came into this case fairly late, but I will be trial counsel as well. We will be working together. What is your position on jurisdiction over the denial of statutory immunity? I believe I'm agreeing with my brother-in-law, in that the jurisdiction, I believe, is, well, I believe that the immunity is a matter of the First Amendment and Short Claims Act through the First Amendment law, not through the 11th Amendment. And I believe that the case, though, is probably a federal court-independent jurisdiction, because there's a 1983 claim, and I believe it's probably before you, because the case is probably before you. On that point, but it's a different aspect of that point, you know, the Virgin Islands Tortoise Claims Act has some rather specific requirements. Yes. And how can we ignore the contents of the statute and not find that the court was in error in not dismissing the compliance for your noncompliance with the statute? I took a closer look at that, too, and obviously spoke to Judge Thompson, and she concluded that there was substantial compliance. And I can just, I'll just point out, and I know a copy of the notice that was filed is in the record. The notice of the 10th file, which was filed in Town and Manor, because the incident took place on July 11th, 2013, there was a 90-day time frame, and July 23rd, I think, was the 29th. I mean, neither in the complaint nor in the notice do you specify the total sum of the damages. Well, the, that's true. Well, how can it be a claim? How can either of them be a claim under the statute without specifying the total amount of damages? The rule for the notice is that it needn't supply either of those, either the damages or the total, but it ought to claim those. And the complaint itself lists the nature of the damages requested in the addendum portion. Well, I can see you making the argument that the complaint constitutes the claim. Yes. But if you don't specify in your complaint the amount of damages, I wonder how it meets the statutory requirement. Well, I can just add also that our local rules forbid us from listing monetary amounts in the complaint and tort actions. So you're between a rock and a hard place. You failed to file the notice of intent, and you didn't file the claim, and the complaint won't allow you to list damages. And I think that's probably why the judge said that we were in substantial compliance, because as she viewed it, the main thing we needed to do was to put the government on alert that this claim could be filed. And the notice told them the time, the place, the party, the nature of the claim, personal injury, excessive force, civil rights violations. But isn't that in order to see if the case will settle before it goes to court, that once it goes to court, aren't there requirements that then need to be met? Well, the only official one would be, I believe, the requirement that there be damages listed. And again, I believe that the judge felt that the damages listed in the intent and cause were substantial compliance. Doesn't Section 3410 provide that the notice of intention to file a claim will set forth these matters except items of damage or injury, and that some claimed need not be stated? That's in the notice, and yes, exactly. And that's why the notice didn't contain that. Then I believe that same section goes on to say that the claim itself needs to state the damages. So the notice was, of course, definitely clearly filed. Judge Thompson, in the case law views, and I just mentioned Grunn v. Dowdy has cited in our briefs, used the purpose of these various filings as to put the government on notice that there's an incident that they're looking at potentially being sued so they can investigate. The information in that notice does all of that. It tells them when, where, how, what, who. Also, the government did investigate. There was a police officer there. Very shortly afterwards, all this was developed in our depositions. They investigated, and the court investigated, and they all issued reports. So all the purposes of the requirements of the Tort Claim Act were met as well. Is the challenge here to the claim as in a complaint or to the sufficiency of the notice? I can't tell you for sure. My sense is that the notice clearly is sufficient, and it's attached to that of the complaint. The claim itself, which is the complaint, has an addendum clause that meets our local filing requirements for complaints, and Judge Thompson was comfortable that we had substantially complied with the act. I believe, though, that you'd have to find that she either abused her discretion in making that determination, or it was as wrong as a matter of law. Another question on sovereign immunity. One of your claims is for gross negligence, but as your colleague said, when you're down, the Tort Claims Act is not here to extend a waiver to claims of gross negligence. So on that, isn't a waiver necessary because sovereign immunity does apply? I agree, yes. That challenge is impoverished, and I'll be there. I don't think my counsel would hire me to be your co-counsel or get mad at me for conveying that. That is clearly certain. Isn't the appropriate way for us to remand in front of the district court to decide that? Yes, that would be. But I can assure you that if it is remanded, that will agree with the counsel of the court or Mr. Richardson that gross negligence is precluded under the local tort score. Okay. Thank you, counsel. Thank you. Thank you. Mr. Hamman, is your challenge to the claim, to complaint, an insufficiency or to the notice itself? It's to both, Your Honor. The notice is insufficient in various ways. The complaint is not the claim. And there's plenty of case law that says that. For the claim to have been actually filed, for the claim to be referred to a claim, the tort claim act requires that the plaintiff ask the court to allow them to do so and have it deemed as such. They've never done that. They've never done that. They've never even addressed it in any of their motions or their responses. They also had an opportunity to cure their defects when the plaintiff, Thompson, turned 18 because he was under a disability. And the tort claim act allowed two years for him to correct all the defects. And they never corrected any of them. They never filed a new notice for him. They never filed a claim. They never asked for it. Okay. Isn't the state of the law, the territorial law, the Supreme Court of the Virgin Islands is the one who needs to determine what level of compliance is required under the Virgin Islands Tort Claims Act. Hasn't the, in Fleming v. Cruz, for one case, hasn't the Supreme Court signaled that perhaps they're not going to require exactitude in compliance with this statute? In Fleming v. Cruz, they said you don't have to be, exactitude is not required as substantial compliance is. But they also signaled that they expected a strict compliance with the statutory requirements of the act in terms of providing notice. And they followed through on that in the Dowdy case where they found one instance of a failure to provide a government notice was fatal to the claim of the plaintiff in that case. In this particular instance, we have numerous deficiencies. There's no mention of negligence anywhere in the notice of detention. There's no verification. There's just a dozen or more deficiencies. And the Dowdy case, I think, signals that based on the Supreme Court's intention to do a strict compliance, that this particular tort claim cannot stand. Yes, I know you have asserted that in your brief. What appears in Joint Appendix 28, the notice of intent itself at the bottom appears to be notarized, signed and notarized. Why doesn't that constitute certification? Under the local rules, verification is a separate instrument than notification. Verification has particular language that notarization does not. And other documents in other cases have been notarized and have been found to be insufficient because the notary is not a verification. I'm out of time. Thank you for that clarification. Thank you. Other questions? Okay. We thank both counsel for their helpful arguments today and we will take this case under advisement as well.